O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA NAVARRO, ) | NO. EDCV 13-00078-MAN |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | AND ORDER |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| Defendant. ) | |

Plaintiff filed a Complaint on January 18, 2013, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (ECF No. 3.) On February 12, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 10.) The parties filed a Joint Stipulation on September 18, 2013, in which plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1) Carolyn W. Colvin, the current Commissioner of Social Security, is hereby substituted as the defendant herein.

decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No. 14.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On April 20, 2010, plaintiff filed an application for DIB and SSI. (Administrative Record ("A.R.") 12.) Plaintiff, who was born on March 22, 1962 (*id.* 20),[2] claims to have been disabled since September 25, 2005, due to breast cancer, major depression, fibromyalgia, ulcerative colitis, diverticulitis, and migraines (*id.* 12, 169).

After the Commissioner denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing. (A.R. 12.) On October 18, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Keith Dietterle (the "ALJ"). (*Id.* 12, 21, 28-53.) Medical expert Steven B. Gerber, M.D., and vocational expert ("VE") Alan Boroskin, also testified. (*Id.* 12, 48-52.) On November 4, 2011, the ALJ denied plaintiff's claim (*id.* 21), and on November 30, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision (*id.* 1-4). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In his November 4, 2011, decision, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 25, 2005, the alleged onset date of her disability. (A.R. 14.) The ALJ determined that plaintiff has the severe impairments of irritable bowel syndrome, migraine headaches, malignant neoplasm of the breast, and affective mood disorder. (*Id.*) The ALJ also determined that plaintiff has the medically determinable impairment of

---

[2] Plaintiff was a younger individual on the alleged disability onset date. (A.R. 20 (citing 20 C.F.R. §§ 404.1563 and 416.963).)

fibromyalgia but that this impairment is nonsevere, because the "medical record does not well document" this condition and does not reflect any limitations resulting from it. (*Id.* 14-15.) The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.* 15.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work, including lifting up to 20 pounds occasionally and ten pounds frequently, standing and/or walking up to six hours in an eight-hour workday, and sitting up to six hours in an eight-hour workday, but is limited to simple routine tasks. (A.R. 16.) In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible, as well as the medical evidence and opinions of record. (*Id.* 16-19.)

The ALJ found that plaintiff unable to perform her past relevant work as a mail carrier. (A.R. 19-20.) Based on plaintiff's age, education,[3] work experience, and RFC, as well as the testimony of the VE, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including the jobs of general office photocopy machine operator, and assembly type jobs. (*Id.* 20-21.)

Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since September 25, 2005, the alleged onset date, through November 4, 2011, the date of the ALJ's decision. (*Id.* 20.)

---

[3] The ALJ determined that Plaintiff "has at least a high school education and is able to communicate in English." (A.R. 20 (citations omitted).)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630 (citing Connett, 340 F.3d at 874). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination . . . .'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges two sources of error. First, she claims that the ALJ failed to properly consider and evaluate the opinion of plaintiff's treating physician at Kaiser, Cynthia Freel, M.D. (Joint Stip. at 3.) Second, she claims the ALJ failed to properly consider plaintiff's credibility. (*Id.*)

## I. The ALJ Erred By Failing To Properly Consider The Opinions Of Dr. Freel.

### A. Legal Standard

An ALJ is obligated to take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(b) and 416.927(b). It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant. Magallanes, 881 F.2d at 751. When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When, as here, it is contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*; *see also* Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

B. <u>Analysis</u>.

Plaintiff claims that the ALJ completely disregarded the opinion of her treating physician, Dr. Cynthia Freel, failed to provide specific and legitimate reasons based on substantial evidence of record for rejecting that opinion, and, indeed, completely failed to mention Dr. Freel's opinion, let alone state whether he accepted or rejected that opinion, or indicate the weight, if any, he was giving it. (Joint Stip. at 3-6.) Plaintiff contends that the fact Dr. Freel found her unable to work due to her physical and mental conditions "would certainly have an impact on the ALJ's determination of plaintiff's RFC and in the jobs that plaintiff was capable of performing." (*Id.* at 4.)

Specifically, plaintiff refers to a December 3, 2006, letter in which Dr. Freel stated that she had been treating plaintiff since 2001, and that plaintiff suffers from "severe disorders that significantly affect her ability to perform" necessary job duties and have caused her a great deal of pain and suffering. (A.R. 307.) Dr. Freel stated that plaintiff is most severely affected by gastroparesis, "causing recurrent bouts of nausea and vomiting which are usually several hours or sometimes days in length," and also suffers from fibromyalgia, major depression, and chronic pain, due to both the gastroparesis and the depression. (*Id.*) Dr. Freel concluded that, in her medical opinion, plaintiff "should be granted complete and total disability."[4] (*Id.*)

The ALJ's decision never specifically mentions Dr. Freel's opinion. He makes a brief mention that a June 11, 2006 record from Kaiser, where Dr. Freel practiced, shows that plaintiff has a "history of irritable bowel syndrome, with complaints of vomiting, diarrhea, abdominal cramps and nausea." (A.R. 17 (citing A.R. 236 - 06/11/06).) Other than that, he refers to none of plaintiff's Kaiser medical records regarding her physical conditions. With respect to her physical

---

[4] The fact that a treating physician has rendered an opinion that can be characterized as an opinion on the ultimate issue of disability does not relieve the Commissioner of the obligation to state specific and legitimate reasons for rejecting it. <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998); <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988).

issues, the ALJ does note that, in both August and September 2008, plaintiff presented to a non-Kaiser emergency room with vomiting and in pain.  (A.R. 17 (citing A.R. 333-45 - 09/07/08, 08/20/08).)

While an ALJ need not discuss every piece of evidence, an ALJ must explain why significant and probative evidence -- such as the findings and opinions of treating physician Dr. Freel -- has been rejected.  See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (an ALJ must provide an explanation when he rejects "significant and probative evidence") (citation omitted).  After reviewing not only Dr. Freel's letter (A.R. 307), but also the Kaiser treatment records dated from September 2004, to December 2006, that support Dr. Freel's findings and opinions (*id.* 221-80), the Court cannot find that the ALJ's complete failure to mention treating physician Dr. Freel's findings and opinions, let alone to provide any specific and legitimate reason for rejecting those opinions, amount to harmless error.

Plaintiff's approximately monthly medical records from Kaiser dated between September 2004, and June 2006, show continuous and ongoing issues with irritable bowel syndrome/gastroparesis, pain, and depression.  For instance, the records show the following: lower abdominal pain for six days with nausea, vomiting, and diarrhea; small amount of red blood in stool (A.R. 234 - 06/06/06); vomiting ten times a day (A.R. 257 - 09/24/04); increased symptoms of stomach pain and vomiting five times that day alone (A.R. 258 - 05/05/04); abdominal pain "waxed/waned" but not resolved (A.R. 259 - 11/04/04); plaintiff started on Prozac (A.R. 260 - 11/04/04); plaintiff feeling "overwhelmed," with "active" suicidal ideation or intent, switched from Prozac to Celexa (A.R. 265, 267, 295 - 05/16/05); bouts of nausea and pain, but had been sick for only one day since the last visit (A.R. 262 - 01/18/05); a lot of vomiting and pain, excessive weight gain, more "depressed lately" (A.R. 268 - 06/14/05); vomiting daily for a week, crying, nauseated (A.R. 269 - 09/28/05); stomach symptoms getting worse, incontinence, lots of nausea and pain, watery diarrhea, and cramping, plaintiff was "in obvious pain[,] crying[,] had to vomit 2x during visit[,] BM x1" (A.R. 270 - 11/01/05); cyclic vomiting and gastroparesis

increasing and now with pain, completely interfering with ability to do ADLs, gastric emptying study ordered (A.R. 271 - 11/01/05); significant symptoms of nausea, vomiting, diarrhea, pain, tearful, depression diagnosed (A.R. 272 - 12/05/0); continued gastroparesis and cramping with increased pain and nausea (A.R. 274 - 03/23/06); persistent/chronic abdominal pain, severe gastroparesis now complicated by major depression (A.R. 275 - 04/05/06); "G.I. symptoms flared a lot this week," increased nausea and vomiting, feels dehydrated (A.R. 276 - 06/09/06); had gone to the Fontana ER for mostly vomiting, daily diarrhea with lower abdominal cramping, on Celexa for depression, colonoscopy ordered (A.R. 277 - 06/16/06); gastric emptying study showed "significant delay in gastric emptying of solid meal and appears to be worse than the previous study of 07/17/03" (A.R. 286 - 01/17/06); between September 2004, and March 2006, plaintiff gained 38 pounds (*compare* A.R. 257 - 09/24/04 - *with* A.R. 274 - 03/23/06); and vomiting, diarrhea, abdominal cramps, and nausea for five days, lasting longer than usual and more severe (A.R. 238-39 - 06/11/06).

At the hearing, the nonexamining medical expert, Dr. Gerber, testified that (1) he had examined the medical records and determined that plaintiff had a "history of Irritable Bowel Syndrome with gastroparesis, a history of migraines and a history of breast cancer . . ." but that the "record doesn't indicate any physical restrictions until 12 of '09,[5] at which point the record is consistent with functional ability at the full range of light level"; and (2) he saw nothing in the medical records to indicate that plaintiff would be unable to hold down a full-time job or would be absent from work because of any of her physical conditions. (A.R. 48-49.) The ALJ gave "great weight" to this testimony, because it purportedly was "consistent with and supported by the substantial medical evidence of record." (*Id.* 19.)

The Court disagrees with both Dr. Gerber's characterization of what the medical records show and with the ALJ's assessment of Dr. Gerber's opinion as "consistent with and supported by

---

[5] In December 2009, plaintiff was diagnosed with breast cancer. (A.R. 346-432.) Dr. Gerber did not opine on plaintiff's mental health records. (*Id.* 48.)

he substantial medical evidence of record." (A.R. 19.) Dr. Gerber's brief testimony and opinion -- that no physical restrictions were indicated in plaintiff's medical record until December 2009 -- is not consistent with or supported by plaintiff's extensive 2004-2006 medical records from Kaiser. Additional medical records further undermine Dr. Gerber's finding of no physical restrictions prior to December 2009. In fact, in August and September 2008, plaintiff went twice to the Corona Regional Medical Center emergency room complaining of abdominal pain, cramping, vomiting, and diarrhea. (*Id.* 335, 339). In August 2008, she complained of vomiting more than 50 times since the prior day. (*Id.*) She also indicated that she had pain like this for eight years, had not seen a doctor in two years, and had a colonoscopy two years before. (*Id.* 339.) In September 2008, she reported she had experienced abdominal pain for three weeks that was worse that day, was experiencing diarrhea and vomiting, and had been diagnosed with diverticulitis after a CT scan the previous month. (*Id.* 334.)

Records from Riverside County Regional Medical Center also support the conclusion that plaintiff's physical (and mental) impairments were ongoing at least after 2006. For instance, a June 8, 2010, progress notes indicates that her depression is "not controlled," and Lexapro should be increased (A.R. 351); in May 2010, she presented with abdominal pain, cramping, nausea, and vomiting, and stated that these symptoms had been occurring for 25 years, and "ha[d] gotten worse in the past year," with mucus in the stool, a 50 pound weight loss in the past year, and a hospitalization in October 2009 for abdominal pain (*id.* 361 - 05/27/10). Similar records show complaints in November 2009 (A.R. 407 - 11/04/09 - abdominal pain and nausea, vomiting, 50 pound weight loss in three months); December 2009 (A.R. 391, 392-93 - 12/08/09 - nausea and vomiting for four years; 56 pound weight loss in the past year, daily abdominal pain, bowel movements 7-8 times a day); February 2010 (A.R. 375 - 02/23/10 - nausea, vomiting); March 2010 (A.R. 370 - 03/23/10 - chronic diarrhea), April 2010 (A.R. 366 - 04/20/10 - nauseated, "having pain"); and March 2011 (A.R. 494-95 - 03/16/11 - abdominal pain, nausea, vomiting, psychiatric medication switched from Lexapro to Cymbalta, in part due to her chronic pain and fibromyalgia).

Moreover, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831; see Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence). However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted). In this case there were no independent clinical findings relied on by Dr. Gerber in arriving at his opinion. Dr. Gerber's opinion by itself, therefore, does not constitute substantial evidence justifying the rejection of Dr. Freel's treating opinion.[6] Lester, 81 F.3d at 831; see Pitzer, 908 F.2d at 506 n.4.

Based on the foregoing, the Court cannot find harmless error in the great weight the ALJ gave to Dr. Gerber's opinion, and the ALJ's complete failure to mention and/or provide specific and legitimate reasons for discounting the opinions of plaintiff's treating physician.

**II. Credibility.**

Plaintiff contends the ALJ did not provide clear and convincing reasons for rejecting her subjective pain testimony. (Joint Stip. at 16.)

---

[6] The ALJ gave "less weight" to consultative examiner Dr. Lim's opinion, because his finding that plaintiff had no physical limitation "was not consistent with, or supported by the . . . substantial medical evidence of record, and failed to consider the claimant's subjective complaints of pain and fatigue." (A.R. 19 (citation omitted).) He similarly gave the non-examining state agency physician's opinion that plaintiff was capable of medium work "less weight" for the same reason. (*Id.*) Thus, the ALJ relied almost entirely on Dr. Bagner's opinion with respect to plaintiff's physical condition.

As noted by the ALJ, in her November 14, 2006 Adult Function Report, plaintiff stated that: on most days she woke up with pain in her stomach and would sit on the toilet for about three hours, some days vomiting due to the severe pain; medications did not always work; she had no appetite, and experienced headaches and nausea; she stayed in her room, watched tv, and talked to her family; she had no social activities; and she could not pay attention for long, and had difficulty following instructions. (A.R. 17 (citing *id.* 159).) At the October 18, 2011 hearing plaintiff testified that: she needs to go to the restroom "a lot"; she experiences cramping and pain that causes her to vomit; the pain exhausts her, and she has depression for which she takes medication but does not receive treatment from a psychiatrist or psychologist; she has headaches at least four times a week, and one headache can last as long as three days; she no longer drives, does any cleaning, laundry, or grocery shopping; she goes to church once a month; she can sit 15 minutes and walks less than a block; she does not lift and carry anything; she does not go out to eat, to the movies, or out by herself; she has difficulty sleeping; and she stopped working, because she was constantly vomiting and had nausea. (*Id.* (citing *id.* 32-47).)

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir.2002); *see also* 20 C.F.R. §§

404.1529(c), 416.929(c).

Here, the ALJ found that "[a]fter careful consideration of the evidence . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 19.) The ALJ cited no evidence of malingering by plaintiff. (*Id.*) Nonetheless, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" to the extent they are inconsistent with the ALJ's RFC assessment. (*Id.*) Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to her subjective symptom and pain testimony must be "clear and convincing."

Specifically, the ALJ discounted plaintiff's credibility for the asserted reasons that: (1) the clinical findings do not support the degree of limitation alleged, because (a) her allegations that she can only sit 15 minutes, walk less than a block, and lift and carry no weight were not supported by the objective evidence, (b) she only received conservative treatment, never received psychiatric treatment or hospitalizations, reported "no fevers or weight loss due to her irritable bowel syndrome, and her examinations were generally normal," and (c) her medical records to not show any recurrence of her cancer;[7] and (2) her allegations were contradictory to her testimony regarding her ability to dress and shower herself, introduce herself to people before and after church once a month, and use a computer for "talking back and forth with her sister," and to the February 7, 2007 (A.R. 314-17), and September 11, 2010 (*id.* 433-36), statements she made to consultative psychiatrist Dr. Ernest A. Bagner that she is able to do household chores and cook, manage money, and drive herself, and she has "a very good relationship with her family" (*id.* 19 (citations omitted)).

Preliminarily, the Court notes that the ALJ misstates at least some of plaintiff's subjective complaints. For instance, he states that she testified she can only sit for 15 minutes, walk less

---

[7] Plaintiff also testified at the hearing that she had another appointment scheduled, because she "felt another lump." (A.R. 34.)

than a block, and cannot lift and carry any weight. (A.R. 19.) However, she actually testified that she can sit for 15 minutes then needs to get up because of the pain in her back and in her head; she had walked a "super block" a few days back, but was "walking with the pain . . . tolerating it"; and after the ALJ asked whether she "limit[s] the amount of weight" that she lifts and carries, she responded that, because she experienced pain for days after lifting her 30 pound grandson, she no longer lifts her grandchildren. (*Id.* 41-42.)

With respect to the ALJ's finding that plaintiff's allegations were contradictory to her testimony, the Court does not find the cited examples to be convincing. Certainly, dressing, showering, introducing oneself to others during church attendance, and chatting on a computer do not appear to be inconsistent with subjective complaints of chronic pain, and recurring nausea, diarrhea, or vomiting. The divergence between statements that plaintiff made years before the hearing that she was able to do household chores, cook, and drive herself and plaintiff's testimony at the hearing that she no longer was able to do any cleaning, laundry, grocery shopping, or driving, and that her cooking consists of microwaving Marie Callender frozen dinners may be explained by the worsening of her conditions over time and, thus, does not provide a sound basis for undermining plaintiff's credibility. (A.R. 37-39.) Further, plaintiff's "very good relationship" with her family would appear to have no bearing on her credibility at all.

Next, the ALJ terms plaintiff's treatment for her conditions as "conservative,"[8] with no reported weight loss and "generally normal" examinations. (A.R. 19.) With respect to the

---

[8] The record does show that plaintiff had been diagnosed with diverticulitis after a CT scan in August 2008 but had not been taking antibiotics because she had no money. (A.R. 334 - 09/07/08.) However, the ALJ cannot diminish plaintiff's credibility on the basis of her financial circumstances. *See* Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("It is true that benefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford."); Gamble v. Chater, 68 F.3d 319, 320-21 (9th Cir. 1995) (collecting cases and concluding that the Commissioner may not deny benefits on the ground that a claimant has a condition that is remediable by treatment when the claimant cannot afford such treatment) ; *see also* Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989) (holding that an ALJ may not rely "on the claimant's failure to take pain medication where evidence suggests that the claimant had a good reason for not taking the medication.")

allegedly "conservative" treatment and "generally normal" examinations the medical records are to the contrary: at the time of Dr. Bagner's September 11, 2010 report, plaintiff was taking the following *nine* medications -- Ativan, Tramadol, Lexapro, Tamoxifen, Pepcid, Zofran, Vicodin, Colace, and Solpidem. (*Id.* 434.) The records also show she underwent at least two gastric emptying studies (*id.* 286 - 01/17/06) and at least one colonoscopy (*see, e.g., id.* 357 - 10/14/09); she saw her primary care doctor at least monthly for gastrointestinal issues; she went to the emergency room on several occasions for gastrointestinal issues (*see, e.g., id.* 234 (06/01/06), 334 (09/07/08), 339 (08/20/08)); she was hospitalized at least once for gastrointestinal issues (*id.* 361 - 05/27/10); she underwent an abdominal CT scan (*id.* 287 - 11/09/05); many of the treatment notes indicated her abdomen was tender to palpitation and/or there were obvious bowel sounds (*see, e.g., id.* 259 (11/04/04), 269 (09/28/05), 271 (11/01/05), 272 (12/05/05), 276 (06/09/06), 277 (06/16/06)); and on at least one occasion she vomited twice during the visit and also had a bowel movement (*id.* 270 (11/01/05)). With respect to plaintiff's weight, it fluctuated significantly, both up and down, between 2003 and 2009.[9]

Based on the foregoing, the Court does not find the ALJ's reasons for discounting plaintiff's credibility to be clear and convincing. On remand, therefore, the ALJ must either credit plaintiff's subjective symptom testimony, or provide clear and convincing reasons why plaintiff's testimony is not credible.

### III. Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where

---

[9] In September 2004, plaintiff weighed 145 pounds. (A.R. 257 - 09/24/04.) She gained 37 pounds in the following six months (*id.* 274 - 03/23/06 - weighed 183 pounds), and then lost 52 pounds over the next three and a half years (*id.* 407 - 11/4/09 - weighed 131 pounds).

the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

The Court finds that in this case remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: August 6, 2014

*Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE